## STUART v. LARSON et al.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1924.)

No. 6402.

1. **Corporations ⬅309(5)—Mortgage to officer for advances, when valid.**

Mortgages made to secure advances to corporation, with expectation that it will continue business as a going concern and meet its obligations, even to an officer, are valid, in absence of fraud or attempt to secure undue advantage by mortgagees.

2. **Corporations ⬅545(2)—Directors may not prefer themselves as creditors.**

Directors of an insolvent corporation, who are also creditors, have no right to grant themselves preferences or advantages in payment of their claims, by taking mortgages or otherwise.

3. **Corporations ⬅545(2)—Burden on directors to show good faith of taking of security for advances.**

Even where security is given by corporation to director for money or credit advanced to keep concern from failure, burden is on director to show good faith of transaction.

4. **Corporations ⬅316(1)—Directors dealing with themselves as individuals must exercise absolute good faith.**

Where directors deal with themselves as individuals, transactions are subject to closest scrutiny, under most searching light of truth, and must be characterized by absolute good faith.

Appeal from the District Court of the United States for the District of North Dakota; Andrew Miller, Judge.

Suit by T. S. Stuart, as trustee in bankruptcy of the estate of the Farmers' Co-operative Elevator & Trading Company, bankrupt, against Hans T. Larson and others. From an order and decree dismissing complaint, complainant appeals. Reversed.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. E. Brace, of Minot, N. D. (George P. Homnes, of Crosby, N. D., on the brief), for appellant.

E. J. McIlraith, of Crosby, N. D., for appellees.

Before STONE and KENYON, Circuit Judges, and PHILLIPS, District Judge.

KENYON, Circuit Judge. This is an appeal from an order and decree of the District Court of the United States for the District of North Dakota, Western Division, dismissing for want of equity the complaint of appellant, trustee in bankruptcy of the estate of the Farmers' Co-operative Elevator & Trading Company, asking the court to annul a certain note and mortgage held by appellees. On account of the paucity of evidence in the record the exact facts are not satisfactorily apparent. The Farmers' Co-operative Elevator & Trading Company is a corporation of North Dakota. It is alleged in the amended complaint that its authorized capital stock was $20,000; that by article 7 of the articles of incorporation "the highest amount of indebtedness to which this corporation shall at any time subject itself is the sum of $10,000." Prior to July 8, 1918, the directors had, for the corporation, incurred indebtedness to the Equity Co-operative Exchange in excess of $25,000, and had indorsed a note or notes to the Equity Co-operative Exchange representing this indebtedness. It seems to be assumed in the briefs and arguments that the indebtedness of the corporation on July 8, 1918, exceeded the subscribed capital stock. On said date appellees, who were the directors of the corporation, made and executed to C. E. Erickson, also a director, as trustee for them, the promissory note of the corporation in the sum of $25,000, and also a chattel mortgage to secure the same, upon all the property and assets of the corporation, the purpose being thus to save them harmless from any liability on the notes of the corporation to the Equity Co-operative Exchange which they had indorsed.

In May, 1921, a petition in voluntary bankruptcy was filed by the corporation, and it was adjudged a bankrupt on the 16th of May, 1921. Appellant, T. S. Stuart, was elected trustee, is now acting, and brings this action. Appellees filed the $25,000 note and mortgage as a claim against the bankrupt. The corporation continued in business after said mortgage was given and incurred indebtedness. At the time of the giving of the mortgage other indebtedness existed. The only witness examined was R. W. Frazier. He was one of the defendants, was secretary of the bankrupt corporation, and one of the parties who held the chattel mortgage given by the corporation for the benefit of the individual members of the board of directors. He testifies that on June 30th, a few days prior to the giving of the mortgage, the corporation was owing the Equity Co-operative Exchange $27,596. He further testifies that the value of the assets of the corporation at that time was $23,988.09, that at the time of giving the mortgage there were debts owing to the Houpt Coal Company in the sum of $508.90, and that there were other smaller debts. It is evident that the debts exceeded the assets by a very considerable amount, and we consider the

proposition fairly established by the meager evidence that at the time of giving the mortgage the corporation was insolvent.

Section 4543, Compiled Laws of North Dakota 1913, provides that directors of corporations must not create debts beyond the subscribed capital stock, and section 4544 makes them individually liable to the corporation and to the creditors thereof, in the event of its dissolution, to the full amount of the debts so contracted. The evidence discloses that the amount of subscribed capital stock was $7,400. So the case presents this situation: Directors of an insolvent corporation, having guaranteed the indebtedness of said corporation, a portion of which was illegal, and which they were probably personally liable for, gave to themselves a chattel mortgage on all the property and assets of the corporation to secure them as indorsers on the notes given by the corporation for such indebtedness, and claim the right in the bankruptcy proceeding to have their claim, by virtue of said mortgage, established in preference to other creditors. That this situation is novel, unusual, and peculiar is quite apparent. It raises some interesting questions of law and burden of proof.

[1] The authorities are not altogether uniform as to the power of directors of insolvent corporations to protect themselves. Transactions between directors, made in the capacity of officers of the corporation, and themselves as individual entities, are closely scrutinized by the courts, and if there is any element of bad faith the courts are quick to remedy the situation. Courts have quite generally held that there is no sound reason why directors should not assist a corporation in need of assistance, by lending money or credit and taking security therefor. Directors are not compelled to wait and see a corporation go down, where they are not able to secure credit elsewhere, and are willing for the sake of the corporation, and to keep it a going concern, to advance money thereto and take security therefor. If the advances are personal ones, to be used by the corporation as an assistance in its emergency, and with the expectation that it will continue in business as a going concern and meet its obligations, the mortgages made to secure the same, even to an officer of a corporation, have generally been held not invalid. Sanford Fork & Tool Co. v. Howe, Brown & Co., Limited, 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713. That, of course, is in the absence of fraud or an attempt to secure an undue advantage by the mortgagees.

The general doctrines applicable to transactions between directors, acting as such, and individuals, is stated by this court in Wyman v. Bowman et al., 127 Fed. 257, 273, 274, 62 C. C. A. 189, 205, as follows:

"Contracts and transactions between individuals and corporations of which they are directors or officers, which are fair, which are made in good faith, which do not secure to the individuals any undue or unjust benefit or advantage, and in which the interest of the individuals and the duty of the officials work in unison for the welfare of the corporation, are valid and enforceable both at law and in equity. * * * But contracts and transactions between individuals and corporations of which they are directors or officers, which are unfair, in which the individuals have secured an undue or unjust advantage, in which an antagonism between the interest of the undividuals and the duty of the officials has resulted in the triumph of the former, are voidable at the option of the corporation, its creditors or stockholders."

In Northwestern Mut. Life Ins. Co. v. Cotton Exchange Real Estate Co. et al. (C. C.) 70 Fed. 155, 161, Judge Philips uttered this vigorous comment:

"A sound public policy, in my judgment, demands that when a business corporation has reached a point in its affairs when its directors know that it cannot pay its debts, and, for the lack of sustenance, cannot longer do business, or cannot 'act up to the design of its creation,' it is then, to all intents and purposes, insolvent. In such conjuncture its directors ought not to be permitted to take advantage of their position as managing officers to appropriate its remaining assets to the payment of their unsecured debts, to the exclusion of other unsecured creditors. Until overruled in this judgment, I shall continue to so administer the law."

In American Exch. Nat. Bank of New York City v. Ward et al., 111 Fed. 782, 787, 49 C. C. A. 611, 616 (55 L. R. A. 356), discussing the question of whether a corporation may prefer its own directors if they happen to be creditors, this court held that "their own personal welfare must at all times be subvient to that of their principal," but indicated that circumstances might fairly arise where it is impossible to borrow money from outsiders and the directors may be the only ones who can help. The court on page 788 of 111 Fed. (49 C. C. A. 611, 617, 55 L. R. A. 356) says:

"The temptations to self-aggrandizement and dishonesty are, of course, great, and require the utmost good faith on the part of directors, and subject them and all their acts to the most rigid scrutiny. Their relations to the corporations are of that intimate and fiduciary character that they are very properly held, whenever their acts are questioned, to assume the burden of proving their absolute good faith and the perfect justice of their demands."

In Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328, it was held that a director of a corporation was not prohibited from lending it money when needed for its benefit, and if the transaction is open and fair. In Richardson's Executor v. Green, 133 U. S. 30, 43, 10 Sup. Ct. 280, 284 (33 L. Ed. 516), the court said:

"Undoubtedly his relation as a director and officer, or as a stockholder, of the company, does not preclude him from entering into contracts with it, making loans to it, and taking its bonds as collateral security; but courts of equity regard such personal transactions of a party in either of these positions, not perhaps with distrust, but with a large measure of watchful care, and unless satisfied by the proof that the transaction was entered into in good faith, with a view to the benefit of the company as well as of its creditors, and not solely with a view to his own benefit, they refuse to lend their aid to its enforcement."

In Sutton Manufg. Co. v. Hutchinson, 63 Fed. 496, 501, 11 C. C. A. 320, 325, Circuit Justice Harlan, writing the opinion, points out the necessity ofttimes arising of keeping a corporation upon its feet and enabling it to continue the transaction of its business, and that it may accept in such crisis financial assistance from one of its directors and secure the same by mortgage upon its property "then loaned or advanced by him, or in that mode protect him against liability then incurred in its behalf by him." The court further says:

"Of course, in cases of that kind, a court of equity will closely scrutinize the transaction, and, in a contest between general creditors and a director or managing officer who takes a mortgage upon its property, will hold the latter to clear proof that the mortgage was executed in good faith, and was not a device to enable him to obtain an advantge for himself over those interested in the distribution of the mortgagor's property."

And he also points out the different considerations when an insolvent corporation, having no expectation of continuing its business, mortgages its property to secure a debt previously incurred by one of its directors, or gives him a preference.

In Lippincott and others v. Shaw Carriage Co. and others (C. C.) 25 Fed. 577, 586, the court considers the question of whether a preference attempted to be given was invalid because two of the directors giving the mortgage were liable as indorsers upon the notes secured thereby, and says:

"The weight of authority seems to be in support of the affirmative of this proposition."

In Re Lake Chelan Land Co., 257 Fed. 497, 500, 168 C. C. A. 501, 504 (5 A. L. R. 557) it was held that an insolvent corporation in need of funds and ready cash may borrow the money needed from a director and secure it by lien on its property. In this case the court says:

"We find no foundation for the argument that the money loaned by Green and Tyler was to enable the company to pay its antecedent debt."

That distinguishes the case quite readily from the case at bar. Had it not only been a past debt, but a past debt in part illegal, it is probable the language of the court would have been quite different. In Koehler v. Black River Falls Iron Co., 2 Black (67 U. S.) 715, 720, 721 (17 L. Ed. 339), referring to a transaction whereby directors had secured their own debts to the injury of stockholders and creditors, the court said:

"Instead of honestly endeavoring to effect a loan of money, advantageously, for the benefit of the corporation, these directors, in violation of their duty, and in betrayal of their trust, secured their own debts, to the injury of the stockholders and creditors."

And in Thomas, Trustee, v. Brownsville, etc., Co., 109 U. S. 522, 3 Sup. Ct. 315, 27 L. Ed. 1018, the action of the directors was denounced by the court as "utterly indefensible."

[2] The courts are not agreed as to the power of directors of insolvent corporations to prefer themselves, and while directors may in good faith, advance money to keep a corporation a going concern and take security therefor, yet the great weight of authority in this country is that the directors of an insolvent corporation, who are also creditors thereof, have no right to grant themselves preferences or advantages in the payment of their claims over other creditors, and such rule is merely applied common honesty. A director occupies a certain fiduciary position toward the stockholders and the creditors. He has better facilities for knowing the condition of the company than have the other creditors, and he ought not to be permitted to use that position to benefit himself at their expense. A few states have held that a preference to themselves by directors of an insolvent institution is valid. The most notable is the case of Nappanee Canning Co. et al. v. Reid, Murdoch & Co. et al., 159 Ind. 614, 64 N. E. 870, 1115, 59 L. R. A. 199. The force of that opinion, however, is much weakened by the strong dissenting opinion of Judge Hadley, which seems to us the better law. A few other states are in accord with the doctrine thus announced in the Indiana case. The courts have, however, commented

rather emphatically in condemnation of situations where directors have used their position to benefit themselves at the expense of others, and from New Hampshire to California there has been almost a universal note of condemnation for such practice. In Fishel v. Goddard et al., 30 Colo. 147, 69 Pac. 607, 612, the court says: "It is not good morals or good law."

A case very similar to this is Taylor v. Mitchell et al., 80 Minn. 492, 83 N. W. 418. There a mortgage was made by the directors, they being creditors, on the corporate property, to themselves to secure their debt. The corporation was insolvent at the time. The court held that the mortgage was fraudulent as to creditors and (80 Minn. on page 496, 83 N. W. on page 420) said:

"It may be conceded that when, in the ordinary course of business of a solvent corporation, money becomes due to one of its directors, he may rightfully receive payment or security therefor, or prosecute all proper remedies to secure such payment, provided that in so doing he acts in good faith, and in no manner for the corporation; but, when the corporation is insolvent, its directors who are its creditors cannot secure to themselves any advantages or preference over other creditors. They cannot thus take advantage of their fiduciary relation, and deal directly with themselves, to the injury of others in equal right. If they do, equity will set aside the transaction at the suit of creditors of the corporation, or their representatives, without reference to the question of any actual fraudulent intent on the part of the directors, for the right of the creditors does not depend upon fraud in fact, but upon the violation of the fiduciary relation of the directors."

See, also, Bonney v. Tilley, 109 Cal. 346, 42 Pac. 439; Atlas Tack Co. et al. v. Exchange Bank of Macon et al., 111 Ga. 703, 36 S. E. 939; Hays, Sheriff, et al. v. Citizens' Bank et al., 51 Kan. 535, 33 Pac. 318; Clark Co. et al. v. Colton et al., 91 Md. 195, 46 Atl. 386, 49 L. R. A. 698; Taylor v. Fanning et al., 87 Minn. 52, 91 N. W. 269; Symonds et al. v. Lewis et al., 94 Me. 501, 48 Atl. 121; King et al. v. Wooldridge, 78 Miss. 179, 28 South. 824; Williams v. Turner et al., 63 Neb. 575, 88 N. W. 668; Graham v. Carr et al., 130 N. C. 271, 41 S. E. 379; Olney et al. v. Conanicut Land Co. et al., 16 R. I. 597, 18 Atl. 181, 5 L. R. A. 361, 27 Am. St. Rep. 767.

[3, 4] As we have heretofore indicated, there is a distinction between a preference to a director, and merely securing a director for money which he may have advanced to keep the concern alive. It is recognized that a corporation may be in extremis. A director may help to keep it going, may lend it money or credit, and take security therefor. This is not to the injury of creditors, but for their benefit, and is not under the condemnation of the law; but it is an entirely different matter when a corporation is insolvent, and the directors secure a past indebtedness by taking a mortgage to themselves of all the assets of the corporation, not to help the corporation, but to protect themselves. Even where security is given by the corporation to a director for money or credit advanced to keep the concern from failure, the burden is on the secured director to show the good faith of the transaction. Where directors of a corporation deal with themselves as individuals, the transactions are subject to the closest scrutiny, under the most searching light of truth, and must be characterized by absolute good faith.

The record here is unsatisfactory, in that it does not show fully the situation. The court should have placed upon the director defend-

ants the burden of showing that this transaction, out of which came the directors' mortgage, was a transaction to keep the corporation a going concern, and not merely for the benefit of the directors in giving themselves a preference over other creditors. If the evidence should show that the mortgage was given merely to protect a past indebtedness, and that by giving the same the directors as creditors secured an unfair advantage over the other creditors, the mortgage is voidable. We are unable to pass on these questions from anything presented in the record, nor are we able to say whether the complaining parties have the right to raise the question. The record is not clear as to creditors, though it does show there were creditors at the time the mortgage was given. It is claimed they were paid before the bankruptcy proceeding. There must have been creditors at the time of the bankruptcy proceeding, else the same would not have taken place. We are satisfied that appellant made a prima facie case, and that the court erred in not then placing upon appellees the burden of showing the good faith of the entire transaction, and that what was done was not an unfair preference to the directors as against other creditors.

The case is therefore reversed.